**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **STANLEY E. LEIB,** | : | |
| **Plaintiff,** | : | **Case No. 2: 03-cv-361** |
| **v.** | : | **Judge Holschuh** |
| **FAMOUS DISTRIBUTION INC.,** | : | **Magistrate Judge Kemp** |
| **Defendant.** | : | |
| | : | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this action against Defendant alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. Plaintiff has also asserted supplemental state-law claims of age discrimination, breach of contract, promissory estoppel, and wrongful discharge in violation of public policy. This matter is currently before the Court on Plaintiff's motion to strike paragraphs 3 and 4 of the affidavit of Norman Lawson, along with certain exhibits attached thereto (Doc. # 45), Plaintiff's motion to strike the affidavit of James Roth (Doc. # 56), Defendant's motion to strike Plaintiff's affidavit (Doc. # 55), and on Defendant's motion for summary judgment. (Doc. # 37).

**I. Background**

Defendant is a wholesale distributor of HVAC, plumbing and building products for residential and commercial applications. (<u>Second Amended Complaint</u> at ¶ 2). On November 3, 1997, Defendant hired Plaintiff as the HVAC manager for Defendant's Columbus, Ohio branch. (Exhibit F attached to <u>Deposition of Stanley Leib</u>; <u>Affidavit of Stanley E. Leib</u> at ¶ 1). Plaintiff was informed of the position, and was initially supervised by his brother-in-law, Mark

Rorabaugh, who was an operations manager for Defendant.  (Leib Dep. at pp. 49-50; Deposition of Mark Walker Rorabaugh at pp. 6-11).

Although Plaintiff held several different positions with Defendant during the period of his employment, at all times relevant to this case, Plaintiff was an outside sales associate for Defendant.[1]  (Leib Dep. at pp. 50-52, 107-111, 121-125; Leib Aff. at ¶ 11).  As an outside sales associate, Plaintiff's primary job was to call on customers at their place of business.  (Deposition of Don R. Smith, at p. 34).  To that end, Plaintiff was assigned a number of customer accounts. (Leib Dep. at p. 78).

Plaintiff's compensation included a base salary, benefits[2] and, at least initially, commissions based on Plaintiff's overall sales.  (Exhibit F, attached to Leib Dep.; Leib Dep. at pp. 66, 77; Leib Aff. at ¶ 4; Rorabaugh Dep. at p. 47).  However, Plaintiff alleges that, in late 1999, Defendant unilaterally eliminated the commission component of his compensation package.  (Leib Dep. at pp. 84, 95-98; Rorabaugh Dep. at p. 47, 50).  Rorabaugh testified that Plaintiff's commissions were discontinued because the Columbus branch "was not making any money."  (Rorabaugh Dep. at p. 47).

---

[1]As was noted, Plaintiff began his employment for Defendant as the HVAC manager for the Columbus branch– an outside sales position.  Plaintiff then served, for a brief period in 1998, as the branch manager for the Columbus branch.  (Leib Dep. at pp. 50-52).  Plaintiff then requested to return to outside sales and, in June 1999, Defendant hired Bill Helms to replace Plaintiff as the Columbus branch manager.  (Id. at pp. 107-11).  In October 1999, Defendant asked Plaintiff to help in the Newark branch, and Plaintiff complied.  (Id.).  Plaintiff returned to the Columbus branch as an inside sales associate in March 2000.  (Id. at pp. 121-23).  Plaintiff was then returned to outside sales for the Columbus branch in June 2000, a position he held until his termination.  (Id. at pp. 125; Leib Aff. at ¶ 11).

[2]Benefits included health and retirement benefits as well as a car allowance.  (Exhibit F, attached to Leib Dep.; Leib Aff. at ¶ 4; Rorabaugh Dep. at pp. 16-17).

In January 2001, Defendant implemented its "Famous 50 Plan." (Leib Dep. at pp. 82-83; Leib Aff. at ¶ 6).  The Famous 50 Plan is a discretionary program in which sales associates are paid commission-like benefits based upon the attainment of certain sales objectives. (Leib Aff. at ¶ 6; Smith Dep. at pp. 37-38).  Thereafter, however, Defendant modified the Plan and announced that it would re-start the Plan in June 2001, with commissions to be paid in January 2002. (Leib Dep. at pp. 88, 211; Leib Aff. at ¶ 6).  These commissions were to be based on the associate's total sales from his or her assigned accounts during the preceding six month period.[3] (Leib Dep. at pp. 83-85, 87, 138-39, 211; Leib Aff. at ¶ 6).  However, none of Plaintiff's accounts was ever designated as a Famous 50 account. (Smith Dep. at p. 39).  Thus, Plaintiff never received any commissions under the Famous 50 Plan. (Id.; Leib Dep. at pp. 216-17; Leib Aff. at ¶ 7).

Plaintiff contends that, beginning in January 2001, he played a significant role in creating a "private label equipment program" for a new customer, Atlas Butler.[4] (Leib Dep. at pp. 84, 151-52; Rorabaugh Dep. at p. 41).  Defendant began selling equipment to Atlas Butler under this program on May 15, 2001. (Leib Dep. at pp. 151-53).  After the Atlas Butler account was up and running, Defendant hired Chris Brown, then age 27, to work at the sales counter, *i.e.,* as an

---

[3]In his deposition, Plaintiff testified that the relevant period under the Famous 50 Plan was one year. (Leib Dep. at pp. 83-85).

[4]Plaintiff explains that the private label program was designed to "put together entire heating, ventilation and air conditioning systems ("HVAC systems") and package[] them for sale by Atlas Butler as its own brand of merchandise." (Plaintiff's Memorandum in Opposition, at p. 9, n. 8).  Plaintiff also contends that he played a key role in developing the Atlas Butler parts program, a separate program that provided individual parts to Atlas Butler. (Leib Dep. at pp. 153-54; Smith Dep. at pp. 176-77).

inside sales associate at the Columbus branch.[5] (Id. at pp. 170-74). Brown's job duties included taking orders from Atlas Butler and inputting them into the computer system. (Id. at p. 172). Plaintiff contends that this, in effect, helped reduce his workload with respect to the Atlas Butler account. (Id. at p. 174). Nevertheless, Plaintiff contends that the Atlas Butler equipment program was very time intensive, both in its creation and its implementation, which limited the amount of time he could devote to other customer accounts. (Id. at pp. 145-48, 152-54).

Plaintiff alleges that in March 2001, Rorabaugh took several of Plaintiff's accounts and reassigned them to Bill Helms, the Columbus branch manager.[6] (Id. at pp. 86, 139-40). Plaintiff complains that this affected his potential commissions under the Famous 50 Plan. Plaintiff also alleges that, in February 2001, Defendant took away his company car and, instead, gave him a $500 car allowance. (Id. at p. 127; Exhibit 14, attached to Deposition of Norman Lawson).[7] Plaintiff did not object to this change. However, in January 2002, Defendant increased the car allowance by $150. (Exhibit 15, attached to Lawson Dep.; Rorabaugh Dep. at pp. 45). Plaintiff alleges that he was the only full-time outside sales associate that did not receive the increased car allowance. (Leib Aff. at ¶ 9; Palermo Dep. at p. 20-23).

During the period of time in which Plaintiff reported to Rorabaugh, he received positive performance evaluations. (Rorabaugh Dep. at pp. 30-31). However, in June 2001, after an

---

[5]Chris Brown was born December 17, 1973. (Lawson Dep. at p. 132; Chris Brown employment verification, attached to Affidavit of Leslie Blair Graden).

[6]As was noted *supra*, note 1, Bill Helms was hired in June 1999 to replace Plaintiff as the Columbus branch manager. Bill Helms was 35 years of age at the time. (See Lawson Dep. at p. 131; William Helms employment verification, attached to Graden Aff.).

[7]Norman Lawson is the Director of Human Resources for Defendant. (Lawson Dep. at p. 8).

4

internal reorganization by Defendant, Plaintiff began reporting to Don Smith, the District Sales Manager for four branches including the Columbus branch. (Leib Dep. at p. 134). While Plaintiff's relationship with Smith began smoothly, it later deteriorated. (Id. at pp. 169, 184-85, 271). For example, Plaintiff alleges that Smith did not spend enough time at the Columbus branch and did not return calls when Plaintiff needed him. (Id. at pp. 184-85). Plaintiff also believe that Smith had a problem with Plaintiff because Plaintiff was making more money than Smith. (Id. at p. 270).

In August 2001, Plaintiff met with Smith, John Palermo[8] and Marc Blaushild, the son of Defendant's owner. (Id. at pp. 142-45). During this meeting, Smith, Palermo and Blaushild discussed their concern that Plaintiff was spending too much time on the Atlas Butler account and needed to spend more time on other accounts as well as generating new accounts. (Id.; Smith Dep. at pp. 101-02; Palermo Dep. at p. 54). Plaintiff contends that at the conclusion of the meeting, Smith, Palermo and Blaushild "understood everything that I was actually doing and the time it was taking up, ... they understood that ... [getting new accounts] wasn't going to happen right away." (Leib Dep. at p. 149).

On November 9, 2001, Smith met with Plaintiff to discuss performance issues.[9] In particular, Smith provided Plaintiff a written memo detailing the areas that Plaintiff needed to improve upon. (Exhibit V, attached to Leib Dep.). For example, the memo explained that Plaintiff should: (1) limit his involvement with Defendant's purchasing department with respect

---

[8]Palermo is the Director of Sales for Defendant and is also Smith's supervisor. (Palermo Dep. at p. 4).

[9]Palermo participated in the conversation by telephone.

to the Atlas Butler account; (2) work with Helms to take over purchasing that was not handed by the "corporate purchasing team;" (3) continue to service the Atlas Butler account; (4) increase sales with other existing accounts and new accounts; and (5) work out of the Columbus branch office, as opposed to Plaintiff's home office, when he was not calling on new or existing customer accounts.  (Id.).

On January 10, 2002, Smith and Palermo met with Plaintiff to address, once again, the performance issues related to the amount of time Plaintiff was spending on the Atlas Butler account.  (Leib Dep. at p. 264-67).  This meeting was followed up, on January 28, 2002, with a written statement that Plaintiff was asked to sign.  (Id. at pp. 264-65; Exhibit X, attached to Leib Dep.).  The written statement indicated that, if Plaintiff did not improve in the areas discussed at the November 11, 2001 and January 10, 2002 meetings, his employment would be terminated. (Exhibit X, attached to Leib Dep.).  Plaintiff refused to sign the document because his name was misspelled and because it pertained to events occurring on January 10, 2002 and not on January 28, 2002.  (Leib Aff. at ¶ 32).

Despite these warnings, Defendant contends that Plaintiff's performance did not improve. In January 2002, Plaintiff projected increased sales in 2002 for all of his accounts.  (Exhibit T, attached to Leib Dep.).  However, Defendant contends that, other than Plaintiff's Atlas Butler account, all of Plaintiff's accounts actually showed decreased sales over the period from August 2001 through March 2002.  (Smith Dep. at p. 118).

Plaintiff alleges that he was never given a written job description for the position of outside sales associate.  (Leib Aff. at ¶ 12; Rorabaugh Dep. at pp. 23-24; Smith Dep. at p. 53; Palermo Dep. at pp. 74-75).  Plaintiff also alleges that Defendant never provided him with any

objective, measurable performance criteria. For example, Plaintiff contends that neither Smith nor Palermo indicated what percentage of time Plaintiff should spend on new or existing accounts other than Atlas Butler, or the time frame in which they expected "improved" results. (Leib Aff. at ¶ 27; Smith Dep. at p. 54, 57-63; Palermo Dep. at pp. 48-56). Plaintiff argues that this made it impossible for him to determine exactly what Defendant expected from him.

Nevertheless, Plaintiff argues that, following Smith's warnings, he did in fact add several new accounts. (Leib Dep. at pp. 193-95, 213-14). Plaintiff also argues that his overall year-to-date sales were up by 76.9% over the previous year.[10] (Id.). However, Plaintiff alleges that no employee of Defendant ever followed up to see if Plaintiff was actually making improvements prior to terminating his employment. (Leib Aff. at ¶ 33; Lawson Dep. at pp. 89-90, 100-02).

Plaintiff alleges that, on February 4, 2002, Defendant reassigned three of his accounts to Helms. (Exhibit 16, attached to Smith Dep.). Additionally, several of Plaintiff's other accounts were made "house accounts," *i.e.,* accounts that any sales associate could work on. (Id.; Smith Dep. at p. 33). Defendant, however, contends that at least some of these changes were made at Plaintiff's request. (Smith Dep. at p. 26; Exhibit 16, attached to Smith Dep.; Exhibit Z, attached to Leib Dep.). Moreover, Defendant contends that, despite this reduction in the number of accounts, Plaintiff did not show any improvement. (Smith Dep. at pp. 110-12).

On March 22, 2002, Plaintiff met with Smith and Palermo, who informed him that his employment with Defendant was being terminated. Plaintiff alleges that neither Smith nor Palermo informed him why he was being terminated. (Leib Aff. at ¶ 34; Smith Dep. at pp. 111-

---

[10]As was noted *supra*, Defendant contends that, with the exception of Plaintiff's Atlas Butler account, all other accounts showed decreased sales. (Smith Dep. at p. 118).

12; Palermo Dep. at p. 78).  Instead, Plaintiff argues, Palermo merely stated that "its not working out."  (Leib Aff. at ¶ 34; Palermo Dep. at p. 79; Smith Dep. at p. 112).

## II.  Motions to Strike

The parties have filed several motions to strike affidavits that were submitted in connection with Defendant's motion for summary judgment.  In particular, Plaintiff has filed a motion to strike paragraphs 3 and 4 of the affidavit of Norman Lawson along with two exhibits attached thereto (Doc. # 45), and a motion to strike the affidavit of James Roth (Doc. # 56).  Defendant has filed a motion to strike Plaintiff's affidavit (Doc. # 55).

Rule 56 of the Federal Rules of Civil Procedure requires that all affidavits submitted in support of, or in opposition to, motions for summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  A district court may exclude from consideration an affidavit that it deems improper.  See Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 599 (S.D. Ohio 2003).

Plaintiff argues that the Lawson affidavit contains statements that are not based on personal knowledge and refers to documents that have not been properly authenticated.  Defendant responds that Plaintiff's motion is moot because Plaintiff has admitted that the evidence is authentic and admissible.  Plaintiff, however, denies such a concession.

In response to Plaintiff's motion to strike paragraphs 3 and 4 of the Lawson affidavit and attached exhibits, Defendant submitted the Roth affidavit to "bolster the admissibility" of the exhibits attached to the Lawson affidavit.  Plaintiff argues that, like Lawson, Roth's testimony is not based on personal knowledge.  Plaintiff also argues that the Roth affidavit should be stricken

because Roth was not properly identified as a witness pursuant to Rule 26(a) of the Federal Rules of Civil Procedure.[11]

Assuming, *arguendo*, that the disputed evidence is improper under Rule 56(e), this Court finds it unnecessary to strike the disputed affidavits and exhibits. The disputed evidence relates solely to issues pertaining to Plaintiff's supplemental state-law claims. In particular, the disputed evidence relates to Plaintiff's state-law claims involving the alleged non-payment of Plaintiff's car allowance and an alleged non-payment for unused vacation following Plaintiff's termination. However, because this Court has declined, as will be discussed *infra*, to exercise supplemental jurisdiction over Plaintiff's state-law claims, Plaintiff's motions to strike are moot.

Defendant argues that Plaintiff's affidavit should be stricken because it "is replete with statements that are inadmissible hearsay, conclusory allegations or speculation, or contradict Plaintiff's prior sworn deposition testimony." (Defendant's Motion to Strike Plaintiff's Affidavit at p. 1). Defendant generally argues that, because Plaintiff's affidavit states that the "facts are all true to the best of my own personal knowledge and belief...," it must be stricken as not based on personal knowledge. (Id. at p. 3 (emphasis added)). Defendant also raises specific objections to

---

[11]Rule 26(a) provides, in relevant part:

> **(1) Initial Disclosures.** Except in categories of proceedings specified in Rule 26(a)(1)(E), or to the extent otherwise stipulated or directed by order, a party must, without awaiting a discovery request, provide to other parties:
>
>> **(A)** the name and, if known, the address and telephone number of each individual likely to have discoverable information ....

Fed. R. Civ. P. 26(a)(1)(A).

particular portions of Plaintiff's affidavit.  Plaintiff responded by submitting a supplemental affidavit stating that the "facts are all true to the best of my own personal knowledge...." (Supplemental Affidavit of Stanley E. Leib attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike...).  Plaintiff contends that the supplemental affidavit cures any prior deficiencies.

      This Court generally agrees that statements made in an affidavit "on belief" are insufficient to satisfy the personal knowledge requirement of Rule 56(e).  See Reddy v. Good Samaritan Hosp. & Health Ctr., 137 F. Supp.2d 948, 956 (S.D. Ohio 2000).  However, even assuming that Plaintiff's affidavit contains improper testimony, this Court nevertheless concludes that striking Plaintiff's affidavit is unnecessary.  First, as will be discussed *infra*, the dispositive issue in this case is whether Plaintiff was replaced by a substantially younger employee or whether Plaintiff was treated less favorably than similarly-situated younger employees.  Plaintiff's affidavit provides very little, if any, evidence with respect to these issues.

      In any event, this Court is confident in its ability to disregard any evidence that is not based on personal knowledge, or any inadmissible, conclusory, speculative or contradictory evidence.  See Bovee, 216 F.R.D. at 599; Lombard v. MCI Telecommunications Corp., 13 F. Supp.2d 621, 625 (N.D. Ohio 1998).  Thus, there is no need to strike the disputed evidence from the record.

10

### III.  Motion for Summary Judgment

#### A.  Standard

Defendant has filed a motion for summary judgment in this case.  Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try."  Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir. 1978).  The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must

demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v.

Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position

is insufficient; there must be evidence on which the jury could reasonably find for the opposing

party.  Anderson, 477 U.S. at 252.  The nonmoving party must present "significant probative

evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

facts."  Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993).  The court may,

however, enter summary judgment if it concludes that a fair-minded jury could not return a

verdict in favor of the nonmoving party based on the presented evidence.  Anderson, 477 U.S. at

251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

### B. Application

#### 1. ADEA

Plaintiff alleges that Defendant discriminated against him in violation of the ADEA,

which prohibits employers from discriminating "against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such individual's

age." 29 U.S.C. § 623(a)(1).  In particular, Plaintiff alleges that Defendant terminated his

employment and otherwise demoted him based on his age.  Defendant, on the other hand, has

13

moved for summary judgment contending that it did not terminate or otherwise demote Plaintiff due to his age, but because Plaintiff failed to perform his job at a level that met its legitimate expectations.

An employee alleging age discrimination under the ADEA can withstand a motion for summary judgment by presenting either direct evidence or circumstantial evidence of age discrimination.  Mitchell v. Vanderbilt University, 389 F.3d 177, 181 (6th Cir. 2004); Kline v. Tennessee Valley Authority, 128 F.3d 337, 348 (6th Cir. 1997); Whitt v. Lockheed Martin Utility Services, Inc., 209 F. Supp.2d 787, 792 (S.D. Ohio 2002).  Direct evidence "is that evidence which, if believed, requires the conclusion that the unlawful discrimination was at least a motivating factor in the employer's actions."  Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999).  Circumstantial evidence, on the other hand, is proof that does not, on its face, establish discriminatory animus, but does allow a fact-finder to draw a reasonable inference that discrimination occurred.  Kline, 128 F.3d at 348.

Plaintiff has not presented any direct evidence of age discrimination in this case.  Thus, because Plaintiff is relying on circumstantial evidence to prove age discrimination, his claim will be analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Mitchell, 389 F.3d at 181; Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 350 (6th Cir. 1998).  Under the McDonnell Douglas framework, Plaintiff must first establish a *prima facie* case by showing that: (1) he was a member of the protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the particular position, and (4) he was replaced by a substantially younger employee or he was treated differently from similarly-situated younger employees.  See O'Connor v. Consolidated Coin Caterers, 517 U.S.

14

308, 313 (1996); Policastro v. Northwest Airlines, Inc., 297 F.3d 535, 538-39 (6th Cir. 2002);

Godfredson v. Hess & Clark, Inc., 173 F.3d 365, 371 (6th Cir. 1999); Mitchell v. Toledo

Hospital, 964 F.2d 577, 582-83 (6th Cir. 1992).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant who must then

"'rebut the presumption of discrimination by producing evidence that ... [P]laintiff was rejected,

or someone else was preferred, for a legitimate, nondiscriminatory reason.'" Manzer v.

Diamond Shamrock Chems. Co., 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting Texas Dep't of

Community Affairs v. Burdine, 450 U.S. 248, 254 (1981)).  If Defendant meets this burden,

Plaintiff must "produce sufficient evidence from which the jury may reasonably reject the

employer's explanation." Manzer, 29 F.3d at 1083.  In other words, Plaintiff must show that the

reason offered by Defendant was pretextual.  Plaintiff bears the ultimate burden of persuading

the trier of fact that the employer intentionally discriminated against him.  Burdine, 450 U.S. at

253.

### a.  Was Plaintiff Within the Protected Class

There is no dispute that Plaintiff is a member of the protected class.  The ADEA protects

employees age 40 and over.  O'Connor, 517 U.S. at 312; DiCarlo v. Potter, 358 F.3d 408, 417

(6th Cir. 2004).  Plaintiff was born on July 27, 1948.  (Second Am. Compl. at ¶ 2).  Thus, at all

times relevant to this action, Plaintiff was over the age of 40 and, therefore, within the protected

class.

**b. Was Plaintiff Subject to an Adverse Employment Action**

Plaintiff contends that his "demotion" in March 2001 and his termination in March 2002 constitute adverse employment actions. (Second Am. Compl. at ¶ 18). "An adverse employment action is a 'materially adverse change in the terms or conditions of ... employment because of [the] employer's conduct.'" Mitchell, 389 F.3d at 182 (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885 (6th Cir. 1996)). The Sixth Circuit has recognized that reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions. Policastro, 297 F.3d at 539 (citing Kocsis, 97 F.3d at 885)). Moreover, "[t]he Sixth Circuit has consistently held that de minimis employment actions are not materially adverse and, thus, not actionable." Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). See also Mitchell, 389 F.3d at 182 ("a 'materially adverse' change in employment conditions 'must be more disruptive than a mere ... alteration of job responsibilities'") (quoting Kocsis, 97 F.3d at 885).

**i. Demotion**

Plaintiff alleges that, prior to his termination, several of his accounts were transferred to Helms, a substantially younger employee. (Second Am. Compl. at ¶ 4; Leib Dep. at pp. 86, 139-40). Plaintiff contends that this transfer affected potential commissions under the Famous 50 Plan as well as his daily responsibilities. (Leib Dep. at pp. 139-40. See also Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at p. 29, n. 25). Defendant, however, argues that even if such a transfer of accounts occurred, it would not constitute an adverse employment action under federal law.

This Court notes that, although some of Plaintiff's accounts may have been transferred,

16

Plaintiff has not offered any evidence that his salary, benefits, title or work hours changed as a result of the alleged transfers. Additionally, Plaintiff was not entitled to commissions at the time of his alleged "demotion" in March 2001. As noted by Plaintiff, the Famous 50 Plan did not officially start until June 2001. (Leib Dep. At pp. 87-88; Leib Aff. at ¶ 6). Moreover, none of Plaintiff's accounts was ever designated as a Famous 50 account. (Leib Aff. at ¶ 7; Smith Dep. at p. 39).

In any event, commissions under the Famous 50 Plan were to be based on an associate's increase in total sales from one period to the next. (Smith Dep. at pp. 37-38; Leib Dep. at pp. 83-85, 87, 138-39, 211). Thus, Plaintiff's contention that transferring some of his accounts might affect his commissions is speculative, at best. In fact, Plaintiff contends that his overall sales actually increased during the relevant time period. (Leib Dep. at p. 195; Leib Aff. at ¶¶ 22-23). This Court therefore cannot conclude that the transfer of several of Plaintiff's accounts in March 2001 constitutes an adverse employment action.

### ii. Termination

Defendant does not, however, dispute that Plaintiff's March 2002 termination constituted an adverse employment action. (Defendant's Motion for Summary Judgment at pp. 18-19). The Court therefore concludes that Plaintiff has established this element of his *prima facie* case.

### c. Was Plaintiff Qualified for His Position

Defendant also contends that Plaintiff has failed to establish a *prima facie* case of age discrimination under the ADEA because Plaintiff was not qualified for his position. In particular, Defendant argues that Plaintiff was not "performing his job 'at a level which met his employer's legitimate expectations.'" (Defendant's Motion for Summary Judgment at p. 17

17

(quoting McDonald v. Union Camp Corp., 989 F.2d 1155,1160 (6th Cir. 1990)).  Plaintiff,

however, responds that he was objectively qualified to perform the duties of an outside sales

associate for Defendant.

In the past, the Sixth Circuit has indicated that a plaintiff must prove that he was

performing his job at a level which met his employer's legitimate expectations in order to show

that he was qualified for the position.  See McDonald, 989 F.2d at 1160 (explaining that "[i]f

[plaintiff] was not doing what his employer wanted him to do, he was not doing his

job")(citations omitted); Godfredson, 173 F.3d at 372 ("[t]he role of the court is not to review the

employer's business decision, but rather to determine if the employee was performing to the

employer's reasonable satisfaction").

More recently, the Sixth Circuit has cautioned that "when assessing whether a plaintiff

has met her employer's legitimate expectations at the *prima facie* stage of a termination case, a

court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced'

by the defense as its reason for terminating plaintiff."  Cline v. Catholic Diocese of Toledo, 206

F.3d 651, 660-61 (6th Cir. 2001) (emphasis added).  In other words, a court cannot conflate the

*prima facie* analysis with the second stage of the McDonnell Douglas inquiry.  The only relevant

inquiry at the *prima facie* stage of the analysis is whether the employee was objectively qualified

for the position, taking into consideration the employee's education, experience, and skills.  See

Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 575-76 (6th Cir. 2003).  See also Chitwood

v. Dunbar Armored, Inc., 267 F. Supp.2d 751 (S.D. Ohio 2003); McElroy v. Philips Medical

Systems North America, Inc., Nos. 03-6219, 03-6351, 2005 WL 406335, *5 (6th Cir. Feb. 18,

2005); Gunthorpe v. DaimlerChrysler Corp., No. 02-3840, 2004 WL 232212, *2 (6th Cir. Feb. 3,

18

2004).

Defendant argues that Plaintiff was not qualified because, contrary to his supervisor's expectations, Plaintiff was not spending enough time on accounts, other than Atlas Butler, and/or generating new accounts. Defendant contends that, as an outside sales associate, Plaintiff was expected to spend 75% of his time developing new business and 25% of his time on the Atlas Butler account. (Smith Dep. at pp. 100-01). However, Defendant contends that Plaintiff spent 75% of his time solely on the Atlas Butler account. (Id. at pp. 101-02). Additionally, Defendant contends that Plaintiff was spending too much time on purchasing activities. (Id.; Exhibit 4, attached to Smith Dep.). This is the same reason given by Defendant for terminating him.

Plaintiff argues that he was never given a written job description for the position of outside sales associate and was never given any specific, measurable performance objectives. (Leib Aff. at ¶¶ 12-14). Plaintiff also argues that, although Smith informed him that he needed to improve his performance in certain areas, Smith did not provide any specific guidance as to the amount of time he should spend on particular accounts or the time frame in which he had to show improvement. (Smith Dep. at pp. 54, 57-63; Palermo Dep. at pp. 48-56). Finally, Plaintiff argues that his 76.9% year-to-date increase in overall sales as of the date of his termination supports his contention that he was objectively qualified for his position. (Leib Dep. at p. 195; Leib Aff. at ¶¶ 22-23). Plaintiff contends that it was impossible for him to determine exactly what Defendant expected from him and, therefore, Defendant's subjective evaluation of his performance is insufficient to support a claim that he was unqualified for his position.

Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether he was objectively qualified for the position of an outside sales associate with

Defendant. Moreover, Defendant does not argue that Plaintiff lacked the necessary education, experience, or skills to perform his duties as an outside sales associate. As the court in <u>Chitwood</u> found, "poor performance only precludes a prima facie case where plaintiff concedes he was not performing at a level that met his employer's legitimate expectations. 267 F. Supp.2d at 756 (citing <u>Wexler</u>, 317 F.3d at 575). Plaintiff has not made such a concession in this case. The Court therefore concludes that Plaintiff has submitted sufficient evidence to satisfy this element of his *prima facie* case of age discrimination under the ADEA.

### d. Was Plaintiff Replaced or Treated Differently

Finally, Defendant argues that Plaintiff cannot establish a *prima facie* case of age discrimination under the ADEA because he has failed to show that he was replaced by a substantially younger employee or that he was treated differently from similarly-situated younger employees. Defendant specifically contends that Plaintiff was not replaced but, instead, that his sales accounts were reassigned to several other employees. Defendant also contends that Plaintiff has not identified any similarly-situated younger employees who were treated more favorably. Plaintiff, on the other hand, argues that he was replaced by Helms and Brown who were substantially younger employees.

### i. Replaced

Defendant argues that Plaintiff was not "replaced," as that term has been defined by the Sixth Circuit in connection with a claim of age discrimination under the ADEA. The Sixth Circuit has specifically stated that "[a] 'person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.'" <u>Grosjean v.</u>

20

First Energy Corp., 349 F.3d 332, 336 (6th Cir. 2003) (quoting Barnes v. GenCorp, Inc., 896 F.2d 1457, 1465 (6th Cir. 1990)), cert. denied, 541 U.S. 1010 (2004).  See also Whitt v. Lockheed Martin Utility Services, Inc., 209 F. Supp.2d 787, 794 (S.D. Ohio 2002)(citations omitted). "'Spreading the former duties of a terminated employee among the remaining employees does not constitute replacement.'" Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1115 (6th Cir. 2001) (quoting Lilley v. BTM Corp., 958 F.2d 746, 752 (6th Cir.), cert. denied, 506 U.S. 940 (1992)).  Instead, a person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.  Barnes, 896 F.2d at 1465.

Plaintiff argues that he was effectively replaced by Helms and Brown, two substantially younger employees.  In support of his position, Plaintiff cites Minervini v. Seven Worldwide, Inc., No. 01C0683, 2002 WL 58793 (N.D. Ill. Jan. 16, 2002).  In Minervini, the plaintiff, a company sales agent, alleged that his employer discriminated against him on the basis of age. The court noted that a substantially younger employee had assumed the plaintiff's former accounts.  Id., at *6.  The court also noted that other employees also assumed some of the plaintiff's former responsibilities.  Id.  The ages of those other employees were unknown.  The court therefore held that there was a genuine issue of material fact as to whether the plaintiff had been replaced.  Id.

This Court does not find Minervini persuasive for two reasons.  First, in this case, there is no evidence that a single employee assumed all or substantially all of Plaintiff's accounts. Instead, as will be discussed infra, the evidence in this case reflects that some of Plaintiff's sales accounts were divided among multiple employees.  Second, to the extent that Minervini does in fact stand for the position that an ADEA plaintiff can satisfy the fourth prong of his/her *prima*

21

*facie* case of age discrimination by submitting evidence that multiple employees replaced

him/her by distribution of plaintiff's accounts, it is directly contradicted by Sixth Circuit

precedent and, therefore, it is not persuasive authority for this Court.

With respect to Helms, there is no dispute that Helms was a substantially younger

employee at all times relevant to this case.[12]  See Grosjean, 349 F.3d at 340.  There is also no

dispute that, between March 2001 and March 2002, several of Plaintiff's accounts were

reassigned to Helms.  (Leib Dep. at pp. 86, 139-40; Smith Dep. at pp. 163-65; Exhibit 16,

attached to Smith Dep.).  However, while Helms may have assumed some of Plaintiff's accounts,

he did not assume all of Plaintiff's accounts.  (Smith Dep. at p. 163; Exhibit 16, attached to

Smith Dep.).  Nor is there any evidence that Helms had to otherwise relinquish any of his own

accounts and/or responsibilities when he was reassigned some of Plaintiff's former accounts.

Moreover, the evidence reflects that Ron Ivers, an outside sales associate who worked

out of the Newark branch, assumed at least one of Plaintiff's accounts, *i.e.*, the Atlas Butler

account.[13]  (Smith Dep. at p. 163; Exhibit 16, attached to Smith Dep.; Lawson Dep. at p. 141).

Plaintiff concedes that Ivers was assigned the Atlas Butler account after Plaintiff was terminated.

(Leib Dep. at p. 201).  Additionally, several of Plaintiff's accounts became "house accounts" that

any employee could work on.  (Smith Dep. at pp. 33, 163; Exhibit 16, attached to Smith Dep.).

Therefore, this Court cannot conclude that Plaintiff was replaced by Helms under the ADEA.

_____

[12]As was noted *supra*, at all times relevant to this case, Plaintiff was over the age of 50 and Helms was under the age of 40.

[13]Ivers was 49 years old at the time he was hired in September 2001.  (Ron Ivers employment application, attached as Exhibit A to Affidavit of Norman Lawson).  Therefore, Ivers is not a substantially younger employee.  See Grosjean, 349 F.3d at 340.

Plaintiff also argues that Brown replaced him.  In particular, Plaintiff contends that Brown took over Plaintiff's responsibilities with respect to the Atlas Butler account.  (Leib Dep. at pp. 177, 285).  However, Plaintiff's argument appears to be based on his own speculation. While Plaintiff acknowledges that Ivers was assigned to the Atlas Butler account, Plaintiff contends that Ivers "didn't know anything about the product" and therefore speculates that someone else – namely Brown – must have taken over the Atlas Butler account.  (Id. at pp. 177, 201-07).

Plaintiff also cites the deposition testimony of Palermo in support of his argument that he was replaced by Brown.  Initially, it should be noted that Palermo specifically testified that he was not involved in the process of reassigning Plaintiff's former accounts.  (Palermo Dep. at pp. 27, 32-33).  In any event, Palermo actually indicated that, while Brown helped with the Atlas Butler parts program, he did not assume any of Plaintiff's former duties as an outside sales associate.  (Id. at p. 32).

Moreover, as Plaintiff concedes, Brown was hired as an inside sales associate to work behind the counter at the Columbus branch, *inter alia*, entering orders from Atlas Butler into the computer system.  (Leib Dep. at pp. 174-77).  Plaintiff also admits that, after his termination in March 2002, Brown merely continued performing the inside sales associate responsibilities that he had prior to Plaintiff's termination.  (Id. at pp. 206-07).  Thus, while there is no dispute that Brown was a substantially younger employee, the evidence does not reflect that Brown assumed any of Plaintiff's outside sales associate responsibilities.

The evidence in this case reflects that Plaintiff's responsibilities as an outside sales associate were spread among multiple employees who had been performing related work.  This

23

Court therefore cannot conclude that Plaintiff was "replaced" as that term has been used by the Sixth Circuit in connection with a claim of age discrimination under the ADEA.  See Majewski, 274 F.3d at 1115.

### ii.  Treated Less Favorably

Defendant also argues that Plaintiff has failed to establish that he was treated less favorably than similarly-situated younger employees.  The Sixth Circuit has recognized that the fourth element of a *prima facie* case of age discrimination under the ADEA can be established if the plaintiff shows that he was treated differently from similarly situated individuals.  Policastro, 297 F.3d at 539; Mitchell, 964 F.2d at 582.  To establish this element, Plaintiff must show, at a minimum, that he was treated differently from similarly-situated younger employees "for the same or similar conduct...."  Mitchell, 964 F.2d at 583 (citations omitted).  To be comparable, a non-protected employee must be similarly situated to the plaintiff in all relevant respects.  Ercegovich, 154 F.3d at 353.  The Sixth Circuit has provided some guidance as to when employees should be deemed similarly-situated:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

Mitchell, 964 F.2d at 583. (citations omitted).

While Plaintiff does not specifically argue that he was treated less favorably than similarly-situated younger employees, as was noted *supra*, Plaintiff has identified two of Defendant's substantially younger employees who he argues replaced him: Helms and Brown. This Court must therefore determine whether either or both of these employees were similarly-

24

situated employees who were treated more favorably than Plaintiff.

Initially, this Court notes that Brown is not a similarly-situated employee.  Brown was hired as an inside sales associate to work behind the counter at Defendant's Columbus branch, and he continued in that position after Plaintiff's termination.  (Leib Dep. at pp. 174-177, 206-207).  There is no evidence that Brown ever functioned as an outside sales associate.  Therefore Brown is not a comparable employee.

In any event, there is no evidence that Brown's actual sales performance was similar to Plaintiff's performance or that Brown ever received similar performance complaints.  Therefore, even if Brown were a comparable employee, there is no evidence to support an argument that he was treated more favorably than Plaintiff.

Helms, on the other hand, did have job responsibilities that were similar, at least in some respects, to Plaintiff's job responsibilities.[14]  However,  there is no evidence to suggest that Helms had a sales performance record that was similar to Plaintiff's sales performance record.  Nor is there any evidence to suggest that Helms ever received any complaints regarding his job performance similar to the complaints received by Plaintiff.  Therefore, this Court cannot conclude that Helms was a similarly-situated employee who was treated more favorably than Plaintiff.

This Court concludes that Plaintiff has failed to establish the fourth prong of a *prima facie* case of age discrimination under the ADEA.  Because Plaintiff has failed to establish a *prima facie* case, this Court need not address Defendant's stated legitimate, nondiscriminatory

---

[14]While Helms was the manager of the Columbus branch, he also had outside sales associate responsibilities.  (Leib Dep. at pp.86, 139-40; Smith Dep. at pp. 163-65; Exhibit 16, attached to Smith Dep.).

reason for Plaintiff's termination or whether Plaintiff can establish that such a reason is pretextual.  Defendant is therefore entitled to summary judgment on Plaintiff's ADEA claim.

### 2. State-Law Claims

Plaintiff has asserted a number of supplemental state-law claims, including a claim under Ohio Revised Code Chapter 4112, which prohibits employment discrimination on the basis of, *inter alia*, age.  Ohio's statute closely parallels the federal discrimination statutes and Ohio courts rely on cases interpreting the ADEA for guidance.  Majewski, 274 F.3d at 1115; Mitchell, 964 F.2d at 582; Whitt, 209 F. Supp.2d at 792.  Nevertheless, Plaintiff contends that Ohio law and federal law differ with respect to what constitutes "replacement" under the fourth prong of the McDonnel Douglas *prima facie* case.  (Plaintiff's Memorandum in Opposition at pp. 37-39).  This Court, however, believes that Plaintiff's state-law claims would be more efficiently resolved in state court.

A court may decline to exercise supplemental jurisdiction over state law claims when that court has dismissed all of the claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).  In deciding whether to exercise its discretion and dismiss such claims, a court should weigh the issues of "judicial economy, convenience, fairness, and comity."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Musson Theatrical, Inc. v. Federal Exp. Corp., 89 F.3d 1244, 1254-55 (6th Cir. 1996).

This Court initially notes that the United States Court of Appeals for the Sixth Circuit has explained that, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed."  Musson Theatrical, Inc., 89 F.3d at 1254-55 (citations

26

omitted).  See also Weeks v. Portage County Executive Offices, 235 F.3d 275, 280 (6th Cir.

2000); McGuire v. City of Moraine, Ohio, 178 F. Supp.2d 882, 902-03 (S.D. Ohio 2001).  This

Court concludes that, in this case, the issues of judicial economy, convenience, fairness and

comity weigh in favor of dismissing Plaintiff's supplemental state-law claims.  This Court will

therefore decline to exercise supplemental jurisdiction over those claims.


**WHEREUPON**, Plaintiff's motions to strike (Doc. ## 45, 56) are **DENIED** as moot.

Defendant's motion to strike (Doc. # 55) is also **DENIED** as moot.  Finally, Defendant's motion

for summary judgment (Doc. # 37) is **GRANTED** in part.  With respect to Plaintiff's claim

under the ADEA, Defendant's motion for summary judgment is **GRANTED**.  However, because

the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims, those

claims are **DISMISSED** without prejudice.


**IT IS SO ORDERED.**


February 15, 2006                                  /s/ John D. Holschuh
                                                          John D. Holschuh, Judge
                                                          United States District Court


27